Alice Dugan et al.
vs.
John B. McGarry } Eq. No. 8067.

### February 6, 1928.

BAKER, J. Final hearing.

In this case the testimony is quite voluminous and covered the dealings of the parties in considerable detail, so that it does not seem necessary or advisable to refer to it fully.

The bill is brought to set aside and rescind a sale of certain property, of which possession has been taken by the complainants, on the ground of fraudu-

lent statements made by the respondent and his agent in regard to the property in question, and for other relief incident thereto. This property is located in the Town of Warwick and consists of a good-sized apartment house, so-called, together with certain outbuildings and garages, and several lots of land.

The respondent denies that any fraud or misstatement inducing the sale was practiced upon the complainants and claims that the business was transacted freely and with the full knowledge and information of all of the parties concerned.

The complainants' first contention is that Alice G. Dugan is an elderly woman, not well, lacking in judgment and discretion, and that by fraudulent representation she was induced and persuaded to enter into an agreement and to purchase the property involved herein. The testimony does show that she was about 65 years old and of a somewhat nervous temperament. She and her family, however, for many years have been conducting a delicatessen business in the City of Pawtucket with considerable success, and the Court, from the testimony and from Mrs. Dugan's appearance as a witness, does not find that she was lacking in judgment or that she was easily influenced or particularly subject to the control of other parties.

The complainant Andrew Towey is the son of the complainant Alice G. Dugan, and the complainant Alice G. Brewer is her daughter, being the wife of B. Harrison Brewer. The complainant Mrs. Dugan says that she supposed she was buying the whole of the premises involved herein for the sum of $18,000. The papers executed at the time the contract was entered into show clearly that a portion of the premises, including the apartment house, was being sold to her for $19,-000. The testimony further shows that between the time the payment was

made on the property by Mrs. Dugan and the actual execution of the deeds, she and members of her family visited the property once, and probably twice. It is the claim of the respondent that after, or during one of these visits, she expressed the desire to purchase additional land around the apartment house in question and that a bargain was entered into whereby this should be sold her for $5,000 additional, making the total purchase price $24,000.

There is no question but what the papers, as prepared and executed, were on the basis that the total price was $24,000. Owing to certain difficulty about the husband of Mrs. Dugan, the title to the property was taken in the name of her son, Mr. Towey, and was later transferred to Mr. and Mrs. Brewer, who now have the title but who are holding it for the benefit of Mrs. Dugan. The papers in the case were executed, after several conferences, in the office of an attorney. The acknowledgment of the necessary parties was taken and the Court is satisfied that the contents of the documents were either read or in a general way explained to the complainants, so that they either understood what they were doing or if they failed to do so, it was by reason of their own negligence. While apparently the complainant Mrs. Dugan is not a woman of great education, the Court finds that she is perfectly capable of understanding a transaction of this type. In fact, it appears from the evidence that she and her son and other members of the family own real estate in Pawtucket, and that she herself is the owner of a lot in Riverside in East Providence.

As to the actual price agreed upon, therefore, and as to the execution of the agreements, deeds and mortgages, the Court finds that the complainants understood the situation and acted freely and voluntarily.

The complainants, however, further urge as a ground for rescission that the

contract in question is unconscionable and should be rescinded because the value of the property was far less than $24,000, and that although they saw the property once or twice before the deeds and mortgages were executed, they relied upon statements made to them by the respondent and his agent.

The complainants did introduce testimony from very reliable witnesses that the property in question was worth in the neighborhood of fifteen or sixteen thousand dollars at the time it was sold. There are certain memoranda introduced as exhibits in the case which to some extent tend to corroborate this oral testimony. (See Complainants' Exhibits 13 and 14.) On the other hand, the respondent introduced evidence showing that the property was worth twenty-five or twenty-six thousand dollars. Possibly the Court is not obliged to fix the actual value of this property. It would seem that the rentals, when the place is fully occupied, aggregate something over $200 per month, and the Court is inclined to believe that possibly the sum of nineteen or twenty thousand dollars for the whole property might more nearly represent its fair value than the figure for which it was actually sold. This question, however, is so problematical that the Court doubts whether on the question of value alone the contract is so unconscionable that it should be rescinded, although the Court does believe that the respondent struck a pretty stiff bargain with the complainants.

In the judgment of the Court, the strongest feature which the complainants can urge for rescission of this contract and sale is that certain material statements, upon which they relied and acted, were made to them in connection with the property involved by the respondent and his agent Lewis. These men did not impress the Court favorably in their manner of testifying.

After a careful weighing of the evidence in this connection, the Court finds that the respondent and his agent, Mr. Lewis, did make certain fraudulent statements in regard to the property as inducements to bring about the sale, and that the complainants, and particularly the complainant Mrs. Dugan, relied, and under all the circumstances had a right to rely upon these statements, and that they acted thereon. In this connection, the Court will refer, first, to the previous use of the property. It appears from the evidence that this property at one time had been used as a roadhouse, so-called, the reputation of which was apparently more or less unsavory. The Court believes that the respondent and his agent did make to the complainants certain statements that this place had been a gentleman's estate. It is hardly conceivable that the complainants could manufacture in detail the testimony they gave on this point. Secondly, the Court finds that the weight of the testimony shows that certain wrong and fraudulent statements were made to the complainants as to the amount of profit which might be derived from the property and as to the number of apartments then rented and then vacant, and as to the number of rooms contained in the house, and other matters of a similar nature.

In answer to this contention, the respondent urges that the complainants viewed and examined the premises and therefore made an independent investigation upon which they relied. It is true that the complainants did make some examination and investigation of the premises. Some of the matters above referred to, however, would not be revealed by an examination. Furthermore, there is credible testimony tending to show that the respondent rather discouraged a complete examination of the premises. Also, as to the matters referred to, it seems to the Court that the complainants had a

right to rely upon statements made to them by the respondent and his agent as made in good faith and by one with knowledge. The situation in this connection resembles, in the judgment of the Court, to a considerable extent that present in the case of Towbin et al. vs. Pierro et al., 128 Atl., p. 154 (N. J.) in which case relief was granted to the complainants.

Taking all these various circumstances into consideration, together with the fact that the water tower and cesspool connected with the apartment house are on lots which under the original arrangement were not to be sold to Mrs. Dugan, and about which nothing apparently had been said, and also the fact that the first mortgage of $3,000 covering property entirely outside of that involved in this case is being charged to the complainants, it seems to the Court that the great weight of the testimony shows that certain material statements of a fraudulent nature were made to the complainants to bring about and induce the sale, and that they relied and acted upon these statements and had a right to so do. If this was the only situation presented on the evidence, the Court is inclined to believe that the complainants would be entitled to some relief. There can be no question but what under these conditions equity has jurisdiction to rescind or reform contracts of this kind. This principle has been recognized in this State.

Bowen vs. Wolf, 23 R. I. 56;
Means vs. Anderson, 19 R. I. 118;
Brown vs. Hall, 14 R. I. 249.

There is, however, one remaining question which the Court feels is most important. It seems to be well settled law that a party seeking to rescind a contract for fraud or for false representation must do so within a reasonable time, and that the right is lost by failure to act promptly on discovery of the fraud or after it should have been discovered by the use of reasonable diligence. It has, therefore, been held that unreasonable delay in taking steps to set aside a fraudulent contract will have the effect of affirming it and, further, if benefits are taken under the contract or there is continuance in the use or occupation of the property, these will operate to prevent the granting of relief. Reasonable time, of course, depends upon the facts in each case.

C. J. Vol. 13, p. 615, 616, 624.

This general principle has been recognized in this State.

Monast vs. Manhattan Life Ins. Co., 32 R. I. 557.

In many of the cases the decision rests upon the ground that there can be no rescission where the parties cannot be restored to their former position. Regardless of this phase of the matter, however, it seems settled that if there is unreasonable delay then equity will not give relief.

In the case at bar the facts show that the first deposit on the property in question was given October 30, 1925, and that the papers were executed November 3rd or 4th following and the complainants then went into possession of the property. Early in January, 1926, the property was conveyed at the complainants' request, through the respondent's office, from Mr. Towey to Mr. and Mrs. Brewer. Apparently, this was so that the latter could occupy and take charge of the property. It also appears that about this time some arrangement was made between the respondent and Mr. and Mrs. Brewer as to the application of a certain sum of $1,600 in connection with the payment of mortgage interest and principal. Correspondence and conferences followed between the complainants and the respondent in regard to the property. The complainants continued in possession and made changes and improvements; a fire of some sort occurred whereby one of the barns or sheds was destroyed. The bill here was not filed until August 30, 1926, some

nine or ten months after the complainants took possession of the property. The immediate cause of the filing of the bill was certain differences between the respondent and the complainants and the threatened foreclosure by the respondent of his mortgage. In other words, the whole aspect of the matter seems to be that even if the complainants did not care for their bargain, they took it and were making the best of it, and it does not seem to the Court that after such a lapse of time and after their occupation of the premises, they can now come in and ask for a rescision of the whole contract and sale. There is some question in the Court's mind whether the parties could be restored to their former position. Certainly a considerable accounting would have to be had before this could be done. In the opinion of the Court complainants' delay prevents them from obtaining the relief they are now seeking.

It has been urged that even if the Court cannot rescind the contract, it should be reformed. There is, of course, no question as to the power of the Equity Court to reform a contract under the proper conditions. There is, however, in this bill no prayer for reformation and the Court has very serious doubt as to whether under the facts of this case it should attempt to reform this contract under the prayer for general relief. The Court believes that such issues of fact as are material have been answered herein.

The prayer of the bill is denied and the bill is dismissed.

For complainants: Walter I. Sundlun, Baker & Spicer.

For respondent: William H. McSoley.